### N. MARTINI V. THE STATE.

No. 9163· Delivered November 4, 1925.

Rehearing denied February 24, 1926.

**1.—Manufacturing Intoxicating Liquor—Continuance—Properly Refused.**

Where, on a trial for possessing equipment for manufacturing intoxicating liquor appellant moved for a continuance on account of the absence of a witness, and upon the trial the testimony of the defendant negatived the materiality of the testimony of the absent witness, such continuance was properly refused·

2.—Same—Charge of Court—On Circumstantial Evidence—Properly Re-
fused.

Where the evidence showed that mash, still, whiskey, etc., were found in
a cellar under the floor of appellant's house, admittedly with his knowledge,
and there is no suggestion in the record of possession by any other person,
a charge on circumstantial evidence was not required.

3.—Same—Requested Charge—Covered by Main Charge—Properly Re-
fused.

Where appellant requested an affirmative submission of a defensive
theory raised by the testimony, and such defensive issue was properly sub-
mitted in the main charge of the court, there was no error in refusing the
requested charge.

4.—Same—Charge of Court—Held, Sufficient·

Where, on a charge for possessing equipment, etc., for the purpose of
manufactuing intoxicating liquor, there was no error in refusing to charge
that the jury should acquit the defendant, if they found that a man named
Bush owned and operated the still, etc., on appellant's premises. It is
not necessary in any case to the conclusion of guilt of possession that the
jury believe that the accused owns the still, or that he is the person who
operated same, and the defensive theory of appellant was fully covered by
the court's main charge, and requested charges that were given.

5.—Same—Charge of Court—Limiting Extraneous Offenses—Held, Correct.

While we do not want to be understood as holding that the finding of
other articles on appellant's premises at the same time that the still, etc.,
was found, was evidence of extraneous offenses, where the court's charge
instructs the jury not to convict appellant of any offense except the posses-
sion of the still, etc., and that the evidence of finding sugar, bottles, liquid,
etc., could be considered by the jury only as tending to show that appellant
possessed said still for said purpose, no error is shown.

6.—Same—Evidence—Held, Sufficient.

Where, on a trial for possessing a still, etc., for the purpose of man-
ufacturing intoxicating liquor, the undisputed testimony proved the finding
of several barrels of mash, a complete still, warm when found, and a quanti-
ty of whiskey under appellant's house, and the appellant testified that all
this paraphernalia and whiskey was owned by a man named Bush, whose
actual existence was not clearly established, we cannot say that the jury
were not warranted in finding the appellant guilty.

ON REHEARING.

7.—Same—Judgment and Sentence—Reformed.

On rehearing we find no reason for changing our views with reference
to the sufficiency of the evidence, as set out in the original opinion. It ap-
pearing that the judgment and sentence are not correct they will now be
reformed so that appellant will be adjudged guilty of possessing a still for
manufacturing liquor capable of producing intoxication, and that he be
sentenced to confinement in the penitentiary for not less than one nor more
than two years, and the motion for rehearing is overruled.

Appeal from the District Court of Archer County. Tried
below before the Hon. H. R. Wilson, Judge.

Appeal from a conviction for possessing equipment for the purpose of manufacturing intoxicating liquor, penalty two years in the penitentiary.

The opinion states the case.

*Taylor, Muse & Taylo*r and *Heyser & Hicks* of Wichita Falls, for appellant.

*Sam D. Stinson,* State's Attorney and *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Archer County for possessing equipment for the purpose of manufacturing intoxicating liquor, and his punishment fixed at two years in the penitentiary.

There are numerous bills of exception in the record, most of which will be noticed in the opinion. The continuance sought was based on the absence of one Weinzapfel, but the materiality of the testimony of this witness was combated by appellant's own evidence when he took the stand, and the refusal of that part of the application seeking to make an equitable showing manifests no abuse of the discretion of the learned trial judge. The charge against appellant was the possession of equipment for the manufacture of intoxicating liquor, and the testimony of the sheriff as to the contents of the jugs found, and the introduction of the bottles, the still and other equipment before the jury, was not open to the objection made thereto.

The mash, still, whiskey, etc., were found in a cellar under the floor of appellant's house. As far as the record shows no one was on the premises except appellant, his wife, children and the hired man Weinzapfel, who is not claimed by appellant on the trial to have had anything to do with the still, etc. To sustain the conclusion of guilty possession it is not necessary that appellant actually have the still or paraphernalia in his hand, or that anyone so testify. Thomas v. State, 89 Tex. Crim. Rep. 609. It was in his house admittedly with his knowledge. There is no suggestion in the record of possession by any other person except as raised by appellant himself or his witness Sullens and this would seem to obviate the need for a charge on circumstantial evidence in a case where the offense charged was the possession of a still. Appellant asked a special charge that if the jury believed there was a still on his

premises, yet if same was placed there by one Bush and that appellant did not possess the same for manufacturing liquor, or they had a reasonable doubt thereof, they should acquit. We think all the material part of this special charge was covered by the main charge of the court and the special charge given which are set out below:

Special charge No. 1-A is in substance that if one Bush did operate a still at the house of appellant and on his premises, but appellant did not own the still and did not operate it and did not aid or assist in the operation of same, or they had a reasonable doubt of the fact that he did not so own, operate, aid or assist in the operation of said still, the jury should acquit. This charge was correctly refused, as was special charge No. 2-A, which is in substance that if Bush did place a still under appellant's house in his absence, and that appellant did not own, operate, aid or assist in operating same, the jury should acquit. It is not necessary in any case to the conclusion of guilt of possession that the jury believe that the accused owns the still or that he is the person who operated same. The learned trial judge in his main charge gave the following:

"If you believe that there was a still upon the premises of the defendant about the time and place alleged in the indictment, yet if you further believe that the defendant did not possess the same for manufacturing spirituous, vinous and malt liquors capable of producing intoxication, or if you have a reasonable doubt thereof, then you will find the defendant not guilty."

He also gave the following special charge:

"Gentlemen of the jury, in this case you are instructed that even though the defendant was at home and knew that the still in question was on his place, yet you cannot convict the defendant unless you find and believe from the evidence that the defendant possessed the same for the purpose of manufacturing spirituous, vinous and malt liquors capable of producing intoxication, and if you find and believe that he did not possess the same for such purposes or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'not guilty'."

In our opinion the trial court thus pointedly gave to the jury the law applicable to the defensive theory. If one Bush placed the still in appellant's cellar, this would not justify appellant's acquittal, and the submission to the jury of the issue as to whether Bush did place the still in the cellar, as sought by

appellant, could but be confusing and would add no force to the defensive theory, which was that appellant did not have in his possession the still mash, etc., found under his house.

In regard to the limitations in the charge of the testimony of extraneous offenses, we seriously doubt if the testimony of what was found under appellant's house in the way of whiskey, mash and the finished product of the still can be considered as proof of extraneous offenses. The possession of the equipment found by the officers at the same time forms the basis of the instant prosecution, and the finding of the other things was but res gestae. However we observe that the learned trial judge in his charge told the jury that the specific charge against appellant was the possession of a still for the manufacture of intoxicating liquor, and that he could not be convicted of any offense except that, and that the evidence of finding sugar, bottles, liquid, etc., could only be considered by the jury as tending to show, if they did so show, that appellant possessed said still for said purpose. We think this was correct. We are not in accord with the proposition that the evidence was not sufficient to support the conclusion of guilt. Appellant's attempt to ascribe the possession of a still to one Bush, seems another case where one charged with crime seeks to lay same upon a mysterious stranger. No one testifies to ever having seen Bush in the neighborhood, or to have known or heard of his except appellant. Appellant's hired man Weinzapfel, who had worked for him for eighteen months up to and including and subsequent to the time of this arrest, had gone for some reason and was in Indiana when this case was tried. Appellant's wife did not appear and tell anything regarding Bush, the still, its possession, etc. No application for continuance was asked because of her absence. It was asserted by appellant on the witness stand that she was at home with a child that was not well. None of appellant's neighbors gave testimony regarding Bush. The only witness in the record beside appellant who gave any testimony that might suggest the presence of a stranger, was one Sullens who said he was a truck salesman of oils, etc., and that during November he sold oil three times to a large light-complected, grey-haired man at appellant's house. Sullens said he did not know the man but the man told him that he was making whiskey. It might seem strange that a man violating the law would thus confide in one whom he did not know. The state impeached this witness by proving by the district attorney and his as-

sistant that in a conversation with Sullens the latter told them that he sold oil to a tall, dark-complected man at appellant's house, and that he had made ten or twelve sales of oil to this man, extending over a period of about a year, and that on some of the occasions appellant was present.

Appellant in his own behalf testified that Weinzapfel had worked for him for eighteen months, but that in November, between the 5th and 10th, he hired a man named Bush, the inference from his testimony being that Bush was hired to help harvest the feed crop. For some reason not disclosed by the record, appellant said that three or four days after hiring Bush he went down to Cooke county, where he stayed about ten days, and when he reached home some time between the 20th and 28th Bush told him he was making whiskey on a still under appellant's house. He said that he told Bush he could not do that and paid him off and discharged him. He also said that he had not seen Bush since the day of the arrest in this case and did not know where he was or what had become of him. On cross-examination appellant admitted that he was in his cellar and saw the still, mash, etc., about a week before the date of his arrest. The officers testified that they went to appellant's house about daylight on November 28th and that he had a fire burning but did not have all of his clothes on. That after warming they searched the premises and found in a cellar under the floor some six barrels of one kind of mash and one barrel of another kind and quite a quantity of whiskey, some of which was in a jug under the end of the coil. The still was warm and the jug under the end of the coil and its contents were also warm, nothwithstanding it was cool weather. Without objection it was shown that appellant made no claim or statement to the officers regarding Bush, or that any one else had anything to do with the paraphernalia. The officers did not see any man named Bush but did take appellant and his hired man Weinzapfel back to town with them. In addition to the above, we observe that while giving testimony in the case on cross-examination, appellant was handed an application made by him for continuance on the day of the beginning of this trial. It was sworn to by him. In same it was shown that he was asking for a continuance because of the absence of Weinzapfel, stated therein to be in Indiana, and that his location and address had but recently been discovered by appellant after much correspondence and effort, and that if the case could be continued until a subsequent term,

Weinzapfel's presence or depositions could be procured, and he would testify that he was operating the still found by the officers and appellant had nothing to do with it. When confronted with this application appellant stated that the name Weinzapfel was inserted in the application by mistake and that it should have referred to Bush, but he could not explain how the application stated that he had located the absent witness in Indiana by letters and correspondence, if same referred to Bush.

We are of opinion that the jury were warranted in concluding that the story of appellant was not true, and in finding him guilty.

The judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant complains at our opinion wherein it is said that no one testified to having seen Bush or known him or heard of him save appellant, and that appellant's wife did not testify. He insists that the latter statement places upon him the burden of proving his innocence. Reference to the failure to produce material witnesses shown to be in position to give favorable testimony, has never been held to be the placing of any burden upon the accused. Appellant also insists that his witness Sullens had seen and known said Bush. This matter is fully discussed and set forth in our original opinion.

Appellant's motion contains the following contention that "When called upon to explain the presence of the still, he denied any guilty knowledge of the presence of the still, and expressly states who was responsible." We do not so read this record. Nowhere in appellant's testimony nor that of any other witness does there appear any statement made by him or them to the effect that when arrested appellant stated that any man named Bush had worked for him, or that such a man possessed the still or had any connection with same. In his testimony appellant said:

"I don't know what became of Mr. Bush. I went to Archer City with Mr. Goodwin. I didn't report his leaving to the sheriff, because I didn't want to cause anybody any trouble."

He further testified:

"I knew all the time after this man Bush told me that that

he was the man who operated the still. I didn't tell any of the officers after I got out from under arrest about Bush operating the still. I don't remember whether or not this is the first time I have told any of them about Bush."

None of the officers who made the search of appellant's premises and discovered the still, gave testimony to any such statement made by appellant.

We are not in accord with the contention in appellant's motion. Putting the most favorable light possible on the facts in this case, and accepting for the purpose of the argument his statement that he came home from an absence not later than November 25th and found one Bush making whiskey under the floor of appellant's house, and that he paid Bush off and told him he must take the still out, and that Bush then told appellant that *he could not move it until he got through with it*, and that on the morning of the 28th of November officers came to appellant's house and found under the floor of the room which appellant was occupying, a still which they said was warm, and freshly run whiskey also warm, the still and paraphernalia being in condition for operation, with six barrels of rye mash and one of apricot mash sitting near, a one-hundred-pound sack of sugar in a car in appellant's garage, jugs and bottles of whiskey in the cellar, bottles and a jar with some whiskey in them in the garage—all these in and around appellant's house and garage would seem to justify the jury's conclusion that appellant was guilty whether they found Bush to have ever been there or not.

No question was raised in the trial court as to the judgment and sentence not responding to the verdict. Our attention is now drawn to the fact that while the court submitted only the question of appellant's guilt of the offense charged in the second count of the indictment, which charge was possession of a still for the manufacture of intoxicating liquor, and the verdict found by the jury was for guilt of the possession of such still—the judgment and sentence were for manufacturing and possession of intoxicating liquor. The judgment and sentence will be reformed so as that appellant will be adjudged guilty of possessing a still for manufacturing liquor capable of producing intoxication, and that he be sentenced to confinement in the state penitentiary for a period of not less than one year nor more than two years, in accordance with the verdict and judgment, and that as reformed the judgment will be affirmed. See authorities cited pp. 900-901 Vernon's C. C. P.;

Pearson v. State, 257 S. W. Rep. 895. Otherwise appellant's motion for rehearing will be overruled.

*Overruled.*